Johnson, C. J. The first point presented in this case relates to the right of the plaintiff below to maintain his suit without showing an actual possession of the premises, upon which the trespass was alleged to have been committed. The case of Ledbetter v. Fitzgerald and Wilson v. Bushnell, 1 Ark. Rep. p. 422 and 470, are clear and conclusive upon the question. This court, in the case last re-’ ferred to, said that “The instruction given to the jury is that it is not necessary for the plaintiff to prove actual possession of the premises at the time the trespasses are alleged to have been committed in order to enable him to maintain his action. The doctrine in relation to this subject has been fully examined during the present term in the case of Ledbetter v. Fitzgerald, and the rule there laid down is considered perfectly correct, and entirely applicable to the case under consideration. It is true, that, by tbe common law, actual possession, or constructive possession by operation of law, as by conveyance under tbe Statute of uses, was necessary to be proved to maintain trespass; for before entry and actual possession, one could not maintain an action of trespass, though he had the freehold in law. 2 Saund. on Pleading 868; 3 Blac. Com. 211; 12 Saund. Rep. 321; 2 T. R. 13; 8 East. 109; Bacon’s Abrd. title C. 3. But the doctrine is now wholly exploded by the courts of our own country; for, as an actual entry into wild and uncultivated land would give no notoriety to the possession on the change of property, it is declared to be an impracticable and an utterly useless thing; and of course a plaintiff may maintain trespass in such cases without actual possession of the premises, — without ever having made an entry upon the land. For not to give him such a right would be to expose his possession to serious and destructive injury, without any adequate remedy or redress. For if he is seized of a lawful estate of inheritance, or in fee, the law presumes that he is rightfully in possession to the extent of his boundary, and his seizure is not confined to his mere occupancy or actual cultivation; but if he enters without tide, he is confined by metes and bounds strictly to his actual possession. It necessarily results from this position, that a party may maintain trespass upon a mere constructive or legal possession, without ever having been actually in the possession of the premises, and as the title of the plaintiff is shown and admitted by the plea, that, therefore, it was unnecessary to adduce any evidence of it. The opinion of the court was, therefore, correct, in the instructions given to the jury, on this point. ’ ’ According to this doctrine there can be no doubt of the right of the plaintiff below to maintain his action, in case he had the legal title to the land, and that, too, without ever having been actually possessed of the premises. It appears from the testimony that the defendant below was in the actual possession of the locus in quo, about the time of the institution of the suit, and he having pleaded title in himself, and each claiming his right to the possession in and by virtue of his legal title, it follows that the scale must preponderate in favor of him in whom the legal title shall be found. The defendant below having set up title in himself; and relying alone upon it for his right to the possession, the whole case is simply resolved into a question of title. The plaintiff below derives his title from Eliza Higgins, who claimed under a deed of gift from her father, Nehemiah Holland. The defendant on his part claimed through N. H. Fish, who purchased at sheriff’s sale, under an execution against Nehemiah Holland, which execution was founded upon a judgment in favor of Fish and against Holland. It is shown by the testimony, that the note upon which the judgment in favor of Fish was rendered, was executed on the 29th day of May, A. D. 1840, and made payable one day after date, and that the deed from Holland to his daughter, which is expressed to have been made in consideration of love and affection, was not executed until the 26th day of February, A. D. 1844. It is contended by the defendant that the deed of- gift from Holland to his daughter, having been made since the debt was contracted, to satisfy which, the execution, under which he purchased, was issued, that, therefore, it is fraudulent and void as against creditors and persons claiming under and through them. This brings us to the main question involved, and in order to determine it correctly, recourse must necessarily be had to the testimony, and the principles of law arising upon it. It was in evidence that Holland, the father of Mrs. Higgins, on the 22d day of February, A. D. 1844, and at the same time that he executed the deed of gift to her for the land in controversy, conveyed the residue of his land, with the exception of eighty acres, to his kindred, by deed of gift also, and that he retained only the eighty acres. Hammett testified that the eighty acres of land was all the property that Holland had, at the time he levied Fish’s execution, and that that in addition to all the rest specified in his deed to Fish, did not satisfy his execution. He also stated that he considered the eighty acres reserved by Holland to be worth eight or ten dollars per acre. Townsend, a witness, introduced by the defendant, also testified that the land retained by Holland was worth ten dollars per acre. This court, at the last term, in the case of Dodd v. McCraw, laid down the doctrine which we consider is strictly applicable to this case. In that case the court said that “the first question presented here is, whether the facts and circumstances detailed in evidence, and under which the gift was made., were such as to constitute fraud per se, or even to raise a presumption ag-ainst the fairness of the transaction. The fact of an existing indebtedness does not render a voluntary conveyance absolutely fraudulent or void in law as against the creditors whose debts were previously contracted; if there was no intention on the part of the grantor to delay or defraud his creditors.” In the case of Van Wick v. Seward, 6 Paige, p. 67; the Chancellor said “I presume it cannot be seriously urged that where a parent makes an advancement to his child, honestly and fairly retaining in his own hands, at the same time, property sufficient to pay all his debts, such child will be bound to refund the advancement for the benefit of creditors, if it afterwards happens that the parent, either by misfortune or fraud, does not actually pay all his debts which existed at the time of the advancement. ’ ’ According to this doctrine, the gift in question cannot be regarded as a fraud per se, as it is shown by the testimony, that the father retained property sufficient at the time to pay the debt, and there is no evidence that his intention was to defraud or delay his creditors. The correct distinction seems to be, that in cases where the father does not retain a sufficiency to meet all demands existing against him, the gift is per se fraudulent; but where he does so retain sufficient to satisfy all his just debts, it is not in itself a fraud, but requires proof aliunde to establish it. A father in making advancements to his child cannot be presumed to foresee what circumstances may overtake him, and as such, it is all sufficient for the purposes of justice, that he should retain in his own hands a sufficient amount of property to meet all his liabilities. Any other notion would put it entirely out of the power of a parent to render any assistance to his child, whilst he labored under any indebtedness, though his indebtedness should be as nothing in comparison with the extent of his property. The proof in this case is, that the eighty .acres of land retained by Holland, the donor, was worth from eight to ten dollars per acre. The claim of Fish at the time he obtained the judgment only amounted to three nundred and forty dollars and forty seven cents. If the gift to Mrs. Higgins was made to defraud any one, it must have been Fish, as it is not shown that he was indebted to any body else. If this was the extent of his indebtedness, and that such was the case we are bound to presume, as no other has been shown, it is clear and unquestionable that he still retained a sufficiency to meet that claim. True it is, that, in Á. D. 1846, the eighty abres so retained by Holland, and also other lands, did not bring a sum sufficient to satisfy Fish’s debt. We are not informed by the witnesses what had transpired between the time of the gift and the sale of the sheriff to reduce so materially the value of the land retained. Whether it had depreciated in value, either by the mere force of circumstances, or som e visitation of Providence, either of which was equally beyond his control, could not materially affect the question. It is sufficient, that after he made the gift to his child, that he honestly and fairly retained a sufficiency to meet his liabilities. We think it clear, therefore, that the facts and circumstances connected with this case would not in themselves amount to a fraud upon Fish, or those claiming under him, and it is equally clear that there is no proof of fraudulent intention. Under this view of the law, as applicable to the facts of this case, the conclusion is inevitable that the sheriff had no legal authority to seize and sell the premises in controversy, and consequently that Fish and those claiming under him acquired no title by their purchase. The defendant below assigned, amongst other reasons why he should have a new trial, that the damages given by the jury were excessive. We consider that the jury were fully warranted in finding the amount which they did. True it is, that there was some discrepancy in the testimony in respect to the value of the cabins which were said to have been appropriated by the defendant, but it was also in evidence that he ruined the fences, and thereby materially lessened the value of the entire premises. The acts of the defendant were all properly before the jury, and we think that they were fully warranted by the testimony in returning the verdict. The instructions given by the court upon its otvn motion, were in some respects rather abstract, and if taken in detached parts, might have been considered doubtful in point of law; yet it is believed that when considered as a whole, they are not subject to any serious objection. The instructions asked b}^ the defendant below, are all directly opposed to the doctrine laid down in this case, and consequently were properly refused. The judgment, of the Circuit Court must, therefore, be, in all things, affirmed.